IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELIANA M. AARON, )
        Plaintiff, )
)
v. )
)
REX W. TILLERSON, Secretary of State, )
        Defendant. )
_____)

Case: 1:17-cv-02507 **JURY DEMAND**
Assigned To : Kollar-Kotelly, Colleen
Assign. Date : 11/20/2017
Description: Employ. Descrim. **(H-DECK)**

## COMPLAINT FOR EMPLOYMENT DISCRIMNATION AND RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

### Preliminary Statement of the Claims

This is a civil action under Section 703(a)(1) and 704(a) of Title VII of the Civil Rights Act of 1964 ("the Civil Rights Act"), 42 U.S.C. Section 701 *et seq.*, against Rex W. Tillerson, in his official capacity as Secretary of the United States Department of State. This action seeks monetary damages and equitable relief (under 42 U.S.C. Section 2000e(5)(g)) from Secretary Tillerson for illegal actions taken by personnel within the Department of State, when they discriminated against Mrs. Aaron, then an employee of the Department, based on her sex (female), nationality (Israeli and American), religion (Orthodox Jewish) and disability, and then retaliated against her for her participation in prior Equal Employment Opportunity (EEO) activity (under 42 U.S.C. Section 2000e-3(a)).

### Jurisdiction and Venue

1. Plaintiff files this civil action under 42 U.S.C. Sections 703(a)(1) and 704(a). This Court has jurisdiction over plaintiff's claims pursuant to 28 U.S.C. Section 1331.

RECEIVED
NOV 2 0 2017
Clerk, U S. District & Bankruptcy
Courts for the District of Columbia

2. Venue is governed by 42 U.S.C. Section 2000e-5(f)(3). Venue in this District is appropriate, inter alia because it is the judicial district in which the employment records relevant to the practices complained of in this complaint are kept, i.e. within the State Department in the District of Columbia.

## Parties

3. Plaintiff Eliana M. Aaron is a Jewish, female citizen of the United States and Israel. She resides in Nof Ayalon, Israel. This was also plaintiff's residence during the time in which the discriminatory and retaliatory conduct occurred. Plaintiff is entitled to the protections of 42 U.S.C. Section 703(a)(1) and 704(a) because of her sex, religion, and national origin.

4. Defendant Rex W. Tillerson is the Secretary of the Department of State, which is an agency of the executive branch of the United States Government. To that end, the State Department maintains consulates in virtually every major nation throughout the world. The American Consulate General in Jerusalem, Israel is a division of the Department of State. Its operations are subject to the direction and control of the Secretary of State, and federal laws, rules and regulations. Employees of the American Consulate General in Jerusalem, Israel are subordinates of the Secretary and thus agents of the Secretary and of the Department of State. The Secretary, the State Department, the American Consulate General in Jerusalem, Israel, and its employees are subject to 42 U.S.C. Section 703(a)(1) and 704(a), under which this action is brought.

## Procedural History

5. In April 2011, Plaintiff filed an informal complaint with the Equal Employment Opportunity Commission ("EEOC") representative at the US Embassy Tel Aviv, Ms. Leah George. This

complaint alleged discrimination on the bases of national origin (American-Israeli), religion (Jewish), disability (physical), and reprisal (prior protected EEO activity) and was revised to include sex (female) as an additional basis of discrimination. Attempts were made to come to a settlement regarding the issues at hand, but the American Consulate General representatives lack of willingness to make any significant policy changes.

6. On May 12, 2011, Plaintiff filed a formal EEOC complaint. This complaint alleged discrimination on the bases of national origin (American-Israeli), religion (Jewish), disability (physical), and reprisal (prior protected EEO activity) and was revised to include sex (female) as an additional basis of discrimination.

7. On September 30, 2013, the EEOC rejected Plaintiff's claims. Plaintiff appealed within the 30-day time frame, but the appeal is still pending.

8. In or about September 2013, Plaintiff filed a second complaint with the Equal Employment Opportunity Commission ("EEOC") following exhaustion of remedies in the Department's Office of Civil Rights. This complaint alleged discrimination on the bases of national origin (American-Israeli), religion (Jewish), and reprisal (prior protected EEO activity). On August 23, 2017 the EEOC Administrative Judge granted summary judgement in favor of the Defendant.

9. In accordance with 29 C.F.R. Section 1614.407(a), this complaint is brought within ninety (90) days of Plaintiff's receipt of the final decision of the EEOC Administrative Judge granting summary judgement in favor of the Defendant.

## Factual Allegations

10. Unlike every other US Consulate in the world, where the sovereignty of the host nation is not called into question, the State Department maintains that the American Consulate General in Jerusalem, Israel ("ACJI") is not located in sovereign Israel, unless it suits the purpose of the State Department to maintain that the Consulate is in sovereign Israel (like when they want to charge an employee with violating Israeli law, as in this case).

11. In contravention to US law and policy, the ACJI, maintains a heavy anti-Jewish and anti-Israeli bias. In a city that is 62% Jewish, Arabs make up approximately 80% of the locally hired employees ate the ACJI. And, the locally hired Palestinians view every Jew or Israeli that is hired as an affront to Palestinian national aspirations. Tensions between employees of the ACJI are common, with Jewish employees frequently feeling as a discriminated-against minority.

12. Plaintiff began her employment at the ACJI in September 2004. She was hired as an occupational health nurse and tasked to establish an independent medical-services unit within the ACJI. After months of having her purchase orders for medical supplies and maintenance orders ignored, Plaintiff was told by her supervisor, Ms. Silvie Martinez, that "the Palestinian supervisors don't want to work with you because they think you were hired because you are Jewish and Israeli". Locally hired Palestinians were supervisors of every other unit and section in ACJI, and were resentful that a Jewish Israeli was hired to manage the health unit.

13. Ms. Martinez then gave Plaintiff a book titled "Understanding Arabs" and told her that the responsibility was hers to accommodate and understand the Arab employees who were outright hostile and refusing to work with her. Plaintiff was forced to re-order supplies multiple times due to "lost" orders, at the behest of her supervisors. A US diplomat supervisor of General Services, Elias Parra, found all of Plaintiff's work and purchase orders stacked under the desk of a Palestinian supervisor. The double and triple supply orders cost the US government thousands of wasted dollars.

14. Throughout Plaintiff's tenure at ACJI, she was subjected to all kinds of hostile acts by her co-workers, such as direct discriminatory and hateful comments about her religion and nationality (Israeli). Officials at the ACJI knew about the hostile, discriminatory activity and took no action to prevent it, did not address it effectively or at all (in some cases), and allowed it to continue through passivity. Throughout Plaintiff's tenure at ACJI she discussed these issues many times with the ACJI EEOC officers. In some cases, some of the EEOC officers were complicit in the discriminatory actions and behaviors, so plaintiff would speak to the other EEOC officer.

15. Despite this trying work environment, Plaintiff received excellent reviews, won numerous awards and built the ACJI Health Unit into one of the most productive and prolific (in terms of patients served) Health Units in the State Department. Employees of other embassy health units would come to ACJI for training, and some of Plaintiff's protocols were used as templates for State Department protocols. ACJI was also the only locally-hired supervised health unit that accepted and managed medical evacuations of US diplomats or military personnel from the larger region.

16. As part of her many job responsibilities, Plaintiff was required to communicate via email and text messages through an ACJI-issued Blackberry, which contained a miniature physical keyboard. Over time, Plaintiff's use of this keyboard, which required repetitive typing with her thumbs, caused Plaintiff unusual and significant pain.

17. In September 2010, after a complex medical evacuation of a diplomat from Jordan, in which many blackberry messages had to be sent to guarantee payments and oversee the international transfer of the patient, Plaintiff sought treatment for her pain. Plaintiff was diagnosed with bilateral De Quervain's and flexor tendonitis - an injury caused by and aggravated by her use of her ACJI-issued Blackberry. Plaintiff continued to suffer from considerable pain and disability, and has been required to use bilateral arm braces, and have rehabilitative physical and occupational therapy for years.

18. Plaintiff asked for a reasonable accommodation in the form of a FOB [a remote device that allows users to access government computers outside the network] and/or a Blackberry keyboard or touch-screen Blackberry device for after-hours communication that did not require use of a keyboard. Because she did not receive those devices, and she was responsible for the health unit and all emergencies after-hours, Plaintiff repeatedly re-injured her wrists in the performance of her official duties by using the Consulate-provided Blackberry device and her condition turned from acute to chronic.

19. The Employee at the ACJI charged with finding an accommodation for Mrs. Aaron was Edward Dwayne Jefferson, a person described by one of his subordinates, Wendy Seay, as "obsessed with seeing Eliana Aaron" fired because of her protected EEO activity, nationality,

and gender. Ms. Marissa Martin, another US diplomat supervisor in charge of General Services (including purchasing), suggested numerous devices, all of which were rejected by Mr. Jefferson.

20. On December 29, 2011. Mr. Jefferson counseled the Plaintiff and referred to her as a "bitch".

21. During Plaintiff's tenure at the ACJI, another similarly-situated employee with a similar disability (but who was of a different religion and national origin than Plaintiff) was given appropriate accommodation of a FOB.

22. Not surprisingly, Mr. Jefferson rejected every possible solution to accommodating Plaintiff's disability. Not only did Mr. Jefferson fail at his duty of finding a reasonable accommodation, but he also inexplicably took on the role of "device monitor" for the ACJI. Specifically, when Plaintiff purchased her own touch screen iPad to help her accommodate her disability within State Department regulations for personal devices, Jefferson emailed her and asked her if she had received approval from the Regional Security Officer. At that time, many ACJI employees had touch screen iPads, iPhones and the like. Upon information and belief, no other employee was asked if he had permission for such a device. Mr. Jefferson forbid Plaintiff from bringing the device in, and only after discovering that other employees had personal touchscreen devices was he forced to agree to her use of the iPad.

23. On May 7, 2012, Plaintiff requested reimbursement for her upcoming studies at Yale University School of Nursing. As Health Unit **Manager** she was seeking a doctoral degree in

Health Policy, **Leadership, and Management**. Furthermore, the degree she was pursuing had become the entry-to-practice degree for nurse practitioners.

24. The HR Officer at ACJI informed Plaintiff that she could apply for 50% reimbursement after completion of the program- a policy that differed from the policy applied to Arab employees at the ACJI. For example, Asim Nairoukh, a subordinate of Plaintiff's, received funding for continued professional training, also in nursing, in 2009. He received his funding immediately after paying for the courses he took and not after the completion of his program.

25. On June 28, 2012, Robert Grech, the Regional Security Officer, removed Plaintiff 24/7 access to the Health Unit. No reason was stated.

26. As mentioned above, Plaintiff filed a complaint with the EEOC in May 2011. Upon information and belief, ACJI personnel learned of this complaint in September 2011. After a few months of plotting to fire Plaintiff in retaliation for her EEOC protected activity, HR produced a memo urging Aaron's firing on January 26, 2012. The grounds: lack of proper documentation with regard to overtime pay, alleged misuse of a government vehicle, and raising concerns about an Arab-run clinic in East Jerusalem (the point of contact at this clinic was a member of Hamas, an organization on the US government's list of terror organizations).

27. On February 1, 2012 HR ACJI offered up another memo to management to fire Plaintiff based on the same specious grounds, even though no evidence had been found after months of investigating Plaintiff.

28. On or around March 2012, at a State Department medical conference in Bangkok, Ty Flewelling, the incoming medical attaché of the Tel Aviv Embassy, informed Plaintiff that he

had been notified by Dr. Kim Ottwell, his supervisor, and Dr. Dan Muhm, the Regional Medical Officer that the ACJI intended to fire Plaintiff and was actively engaging in pursuing that goal. Mr. Flewelling was even informed that the planned time for the termination would be Fall of 2012.

29. On April 17, 2012, HR attempted to justify Aaron's termination in another memo. This time, the improper documentation of overtime took on another equally convoluted formulation-evoking GPS records of Mrs. Aaron's vehicle and conjecture when Mrs. Aaron had to cease working early on Fridays due to the observance of the Jewish Sabbath.

30. ACJI HR was continuously failing to "nail" Mrs. Aaron. However, on June 28, 2012, HR issued another Memorandum. This time the creative juices flowed freely. While citing the old claims and raising even older claims of alleged improper documentation of overtime and the misuse of the government vehicle, HR also cited an event from February 23, 2011 (15 months previously) where Ms. Aaron, in their creative, unsubstantiated, and self-serving opinion had written a prescription in violation of Israeli law, and, that on July 5, 2012 (one week after HR dated this memo) Mrs. Aaron received an immunization in the Health Unit. As with the prescription, ACJI decided that this was in contravention of State Department policy, even though the Regional Medical Officer Dr. Dan Muhm told them it was not, and the Foreign Affairs Manual clearly states that it is within an ACJI local employee's rights to receive immunizations from the Health Unit.

31. In order to establish the erroneous and self-serving assertion that Mrs. Aaron's practice of writing prescriptions was problematic, ACJI removed her local prescription writing privileges at

or about the same time, even though it was in her job description to write prescriptions. This was another reprisal aimed at diminishing her value in serving the ACJI health community.

32. On June 12, 2012, Aaron applied for a registered nurse position in Embassy Tel Aviv. The position of Registered Nurse in Tel Aviv that Aaron applied for included a requirement of at least one year previous US government experience. Aaron had such qualification in abundance; the selected candidate did not. In any event, Consulate and Embassy human resources departments traditionally provide preferential treatment to "internal candidates" or those applying for jobs from within the organization or DOS who are equally qualified.

33. Upon information and belief, ACJI employees and other State Department officials, including, but not limited to, the Regional Medical Officer, Dr. Dan Muhm and his supervisor, Dr. Kim Otwell, encouraged the US Embassy in Tel Aviv not to hire Aaron in retaliation for her EEOC activity. Even though Aaron's scores were the highest of all interviewed candidates, and she was the preferred choice of hire by the incoming Tel Aviv Embassy Medical Attaché, Ty Flewelling.

34. The Department's denial of Mrs. Aaron's bid for employment in the Tel Aviv Embassy and its termination of her employment were the direct result of unlawful retaliation for Plaintiff's protected EEOC activity.

## COUNT 1
### (Violation of Title VII- Discrimination against a Protected Class)

35. Paragraphs 1 through 34, above, are hereby incorporated by reference.

36. Aaron has exhausted all administrative remedies, and this Complaint is timely filed under 29 C.F.R. Section 1614.407(a).

37. At all relevant times, Aaron was a member of a protected class of persons as defined in Title VII of the Civil Rights Act of 1964 ("Title VII").

38. At all relevant times, the Defendant was an employer within the meaning of Title VII.

39. Plaintiff was denied an accommodation for her disability, was denied funding for her continuing education, and was subject to a hostile work environment by Defendant because of her disability, nationality, and sex in violation of Title VII. Defendant also discriminated against Plaintiff in terms of compensation, terms, conditions, or privileges of employment because of her disability, nationality, and sex in violation of Title VII.

40. While employed by Defendant, Plaintiff was subjected to disability, nationality, and sex discrimination by and through Defendant's agents, servants and/or employees, said acts being made unlawful by Title VII.

41. Defendant, by and through his agents, servants and/or employees violated Title VII by the following acts:

> a. Discriminating against Plaintiff with respect to her employment, compensation, or a term, condition, or privilege of employment because of disability, nationality, and sex, and;

    b. Limiting, segregating, or classifying Plaintiff in a way which deprived or tended to deprive Plaintiff of an employment opportunity or otherwise adversely affecting the status of Plaintiff because of disability, nationality, and sex, and;

    c. Failing to provide a work environment free from discrimination based on disability, nationality, and sex.

42. Defendant's actions in violation of Title VII were willful.

43. As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of income, reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

44. As a further direct and proximate result of Defendant's violation of Title VII, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work, and will so suffer in the future.

## COUNT 2
**(Violation of Title VII- Retaliation for Prior EEO Activity)**

45. Paragraphs 1 through 44, above, are hereby incorporated by reference.

46. Plaintiff has exhausted all administrative remedies, and this Complaint is timely filed under 29 C.F.R. Section 1614.407(a).

47. At all relevant times, Plaintiff was a member of a protected class of persons as defined in Title VII of the Civil Rights Act of 1964 ("Title VII").

48. At all relevant times, the Defendant was an employer within the meaning of Title VII.

49. Plaintiff was denied employment in the US Embassy in Tel Aviv, Israel and terminated by Defendant because of her previous protected EEO activity in violation of Title VII. Defendant also discriminated against Plaintiff in terms of compensation, terms, conditions, or privileges of employment in violation of Title VII.

50. Defendant, by and through his agents, servants and/or employees engaged in reprisal against Plaintiff and violated Title VII by the following acts:

   a. Discriminating against Plaintiff by denying her employment in the US Embassy in Tel Aviv because of her prior protected EEOC activity, and;
   b. Terminating Aaron's employment because of her prior protected EEOC activity.

51. As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

52. As a further direct and proximate result of Defendant's violation of Title VII, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and ability to work, and will so suffer in the future.

WHEREFORE, Plaintiff Aaron prays this Honorable Court grant the following relief:

a. Declare that the aforementioned practices and actions of Defendant constitute unlawful employment practices in willful violation of Title VII;

b. Award Plaintiff all back pay, lost wages, past and future, to which she is entitled;

c. Award Plaintiff compensatory damages for physical and mental distress;

d. Award Plaintiff reasonable attorney's fees, costs, and interest;

e. Award Plaintiff all liquidated damages to which she is entitled;

f. Award Plaintiff all punitive damages to which she is entitled; and,

g. Award Plaintiff such other relief in her favor as this Court deems just and proper.

## JURY DEMAND

Plaintiff requests trial by jury.

Dated: 11/17/17                         Respectfully submitted,

*Eliana Aaron, Plaintiff*