# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ELIANA M. AARON,

Plaintiff

v.

MICHAEL POMPEO,

Defendant

Civil Action No. 17-2507 (CKK)

## MEMORANDUM OPINION
(October 25, 2018)

Plaintiff, proceeding pro se, alleges that, while she was an employee of the United States Department of State, she was discriminated against in various ways on the basis of her sex (female), nationality (Israeli and American), religion (Orthodox Jewish), and disability (bilateral De Quervain's and flexor tendonitis) in violation of Title VII of the Civil Rights Act of 1963. 42 U.S.C. § 2000e, *et seq*. She also claims that she was retaliated against for reporting the discrimination. Defendant has moved for a partial dismissal of Plaintiff's Complaint, or in the alternative, for partial summary judgment. Fed. R. Civ. Pro 12(b)(6), 56(a). Defendant argues that the bulk of Plaintiff's claims should be dismissed as untimely as they were filed after the 90-day deadline for filing a court action after a final decision by the Equal Employment Opportunity Commission ("EEOC"). 42 U.S.C. § 2000e-16(c). Defendant further argues that the remaining portions of Plaintiff's hostile work environment claims should be dismissed for failure to exhaust administrative remedies and failure to state a plausible claim to relief.

Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court GRANTS-IN-PART and DENIES-IN-PART Defendant's motion. The Court GRANTS Defendant's motion for summary judgment as to Plaintiff's claims which were raised in her first EEOC action because those claims were filed outside the 90-day deadline for filing an action after the EEOC's final determination. But, the Court DENIES Defendant's motion to dismiss Plaintiff's hostile work environment claims. Considering only the allegations were which exhausted and timely, Plaintiff has stated a claim for which relief can be granted.

## I. BACKGROUND

For the purposes of the motion before the Court, the Court accepts as true the well-pleaded allegations in Plaintiff's Complaint. The Court does "not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014). Further, because Plaintiff proceeds in this matter pro se, the Court must consider not only the facts alleged in Plaintiff's Complaint, but also the facts alleged in Plaintiff's Opposition to Defendant's motion. *See Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d

---

[1] The Court's consideration has focused on the following documents:
- Def.'s Mot. for Partial Dismissal, or in the Alternative, for Partial Sum. Judg., ECF No. 6 ("Def.'s Mot.");
- Pl.'s Opp'n to Def.'s Mot. for Partial Dismissal, or in the Alternative, for Partial Sum. Judg., ECF No. 15 ("Pl.'s Opp'n");
- Def.'s Reply in Support of the Mot. to Dismiss in Part, ECF No. 16 ("Def.'s Reply").

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

146, 152 (D.C. Cir. 2015) ("a district court errs in failing to consider a *pro se* litigant's complaint 'in light of' all filings, including filings responsive to a motion to dismiss") (quoting *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999)).

Plaintiff alleges that, in 2004, she began working for the American Consulate General in Jerusalem, Israel ("ACJI") as an occupational health nurse tasked with developing an independent medical-services unit within the ACJI. Compl., ECF No. 1, ¶¶ 10, 12. Plaintiff claims that she encountered various forms of discrimination while working for ACJI. In all, Plaintiff raises eight claims for relief under Title VII of the Civil Rights Act:

1) Failure to provide reasonable accommodations for her disability;
2) Disparate treatment based on national origin, religion, and/or sex with respect to providing reasonable accommodations;
3) Disparate treatment based on national origin, religion, and/or sex with respect to providing tuition reimbursement;
4) Wrongful non-selection for a Registered Nurse position at the United States embassy in Tel Aviv, Israel;
5) Wrongful removal of Plaintiff's prescription-writing privileges;
6) Wrongful termination of Plaintiff's employment at ACJI;
7) Subjection to a hostile work environment involving negative and discriminatory comments; and
8) Continued subjection to a hostile work environment.

Pl.'s Opp'n, ECF No. 15, 5.

Beginning with Plaintiff's first and second claims, Plaintiff alleges that she faced discrimination when she was refused reasonable accommodations for a disability that she developed on the job. According to Plaintiff, as part of her job, she was required to communicate via email and text through an ACJI-issued Blackberry, which had a small keyboard. Compl., ECF No. 1, ¶ 16. Plaintiff claims that, over time, she developed bilateral De Quervain's and flexor tendonitis caused and aggravated by her use of the

Blackberry keyboard. *Id*. at ¶ 17. Plaintiff contends that she requested an accommodation in the form of a FOB, which would let her send work communications through devices other than the Blackberry, or a touch-screen Blackberry which would not require the use of a keyboard. *Id*. at ¶ 18. Plaintiff alleges that the ACJI employee charged with finding her a suitable accommodation failed to do so. Plaintiff claims that she was not suitably accommodated due to her engagement in protected EEOC activity, her nationality, her religion, and her sex. *Id*. at ¶ 19. As evidence of the discrimination, Plaintiff claims that another similarly-situated employee, who was of a different religion and nationality, was given the appropriate accommodation of a FOB when facing a similar disability. *Id*. at ¶ 21. When Plaintiff purchased her own accommodation in the form of a touch-screen iPad, Plaintiff alleges that she was not allowed to use the iPad until it became known that other similarly-situated employees used similar devices. *Id*. at ¶ 22.

Considering Plaintiff's third claim, Plaintiff alleges that she was discriminated against when she was refused adequate reimbursement for her continued studies in health policy. *Id*. at ¶ 23. According to Plaintiff, ACJI informed Plaintiff that she could apply for 50% reimbursement for the cost of her courses only after completing her continuing education program. But, Plaintiff alleges that ACJI reimbursed Arab employees for their continuing studies immediately, and not upon completion of the program. *Id*. at ¶ 24. She alleges that she was refused adequate reimbursement for her continuing studies on the basis of her nationality, religion, and sex.

Next, Plaintiff's fourth, fifth, and sixth claims relate to the retaliation that she claims that she faced due to reporting her discrimination and engaging in protected EEOC activity. *Id*. at ¶ 26. Plaintiff contends that ACJI personnel learned of her first EEOC complaint, which alleged that she had been discriminated against on the basis of her nationality, religion, disability, sex, and reprisal. *Id*. at ¶ 26. According to Plaintiff, the discovery of her EEOC complaint led to multiple attempts by ACJI to fire her for allegedly unsupported and pretextual reasons. *Id*. at ¶¶ 26-29. For example, ACJI management alleged that Plaintiff had written a prescription in violation of Israeli law and had received an immunization in the Health Unit in violation of State Department policy. *Id*. at ¶ 30. Soon after these allegations were reported, Plaintiff was no longer allowed 24/7 access to the Health Unit. *Id*. at ¶ 25. Additionally, her local prescription writing privileges were removed. *Id*. at ¶ 31. Plaintiff also alleges that she was not hired for a job as a registered nurse at the United States Embassy in Tel Aviv, Israel because ACJI employees discouraged the embassy from hiring her in retaliation for her EEOC complaint. *Id*. at ¶¶ 32-33. Finally, Plaintiff alleges that this retaliation culminated in her wrongful termination from ACJI. *Id*. at ¶ 34.

Finally, Plaintiff's seventh and eighth claims relate to the hostile work environment that Plaintiff alleges she faced. In addition to some of the incidents described above, Plaintiff claims that, from the beginning of her employment, she faced a hostile work environment because she was a Jewish, Israeli woman. *Id*. at ¶ 13. According to Plaintiff, she was told that Palestinian supervisors did not want to work with her because she was Jewish and Israeli. *Id*. at ¶ 12. Plaintiff alleges that many other

employees refused to work with her or to submit her supply orders, causing her to have to re-order medical supplies multiple times. *Id.* at ¶ 13. She also claims that she was subject to other hostile acts and comments by her co-workers due to her religion and nationality. *Id.* at ¶ 14. Plaintiff contends that ACJI officials knew about the discriminatory acts and behaviors, but the officials did not effectively address the discrimination and were sometimes complicit in it. *Id.*

## II. PROCEDURAL HISTORY

Prior to filing a complaint of employment discrimination against a federal agency, a plaintiff must first file an official complaint with the EEOC. Within 90 days of receiving a final decision by either the agency or the EEOC, the plaintiff must file a complaint in a United States district court. 42 U.S.C. § 2000e-16(c).

In her Complaint, Plaintiff alleges that she filed two actions with the EEOC. Plaintiff alleges that she filed her first EEOC complaint on May 12, 2011. This complaint alleged discrimination based on national origin, religion, disability, reprisal, and sex. Compl. ECF No. 1, ¶ 6. According to Plaintiff, the EEOC rejected her claim on September 30, 2013 and the appeal is still pending. *Id.* at ¶ 7. Plaintiff alleges that she filed her second EEOC complaint in or about September 2013, claiming discrimination on the basis of national origin, religion, and reprisal. *Id.* at ¶ 8. According to Plaintiff, on August 23, 2017, the EEOC granted Defendant summary judgment, and Plaintiff filed this action in federal district court within 90 days of that decision. *Id.* at ¶¶ 8-9.

In its motion, Defendant disputes the timeline in Plaintiff's Complaint. According to Defendant, Plaintiff did file her first EEOC complaint on May 12, 2011, but the appeal

is not still pending. Instead, on March 17, 2017, the EEOC issued a final determination in favor of the Defendant on Plaintiff's appeal and mailed the decision to the address of record for Plaintiff's counsel. Def.'s Mot., ECF No. 6, 7-8. Under this timeline, Plaintiff's complaint, which was filed November 20, 2017, was not filed within the 90-day deadline.

In her opposition to Defendant's motion, Plaintiff does not contest Defendant's timeline for her first EEOC action. Instead, Plaintiff argues that the EEOC sent the notice of its final determination only to her attorney's address, which was no longer the correct address. Accordingly, Plaintiff contends that she never received notice of the final determination, so the 90-day deadline never started running and her complaint filed in this Court is timely. Pl.'s Reply, ECF No. 15, 8-13.

## II. LEGAL STANDARDS

### A. Federal Rule 12(b)(6)- Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**B. Federal Rule 56**

Summary judgment should be granted to the movant if the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The party opposing a motion for summary judgment "'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)); *see* Fed. R. Civ. P. 56(c)(1) (opposing party must demonstrate genuine issue by "citing to particular parts of materials in record, including depositions, documents, electronically stored information, affidavits or declarations, [or] stipulations"). "The object of [Rule 56] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Instead, the non-moving party must identify a genuine issue of material fact. "[A] material fact is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Summary judgment is appropriate when "the tendered evidence is in its nature too incredible to be accepted by reasonable minds." *Minor v. Washington Terminal Co.*, 180 F.2d 10, 12 (D.C.Cir.1950) (citation and internal quotation marks omitted).

### III. TIMELINESS OF CLAIMS FROM PLAINTIFF'S FIRST EEOC ACTION

Under 42 U.S.C. § 2000e-16(c), a complaint of employment discrimination against a federal agency must be filed in a United States district court within 90 days of a final decision by either the agency or the EEOC. In this case, Plaintiff sought relief through two different EEOC actions. At issue here is whether Plaintiff filed this suit within 90 days of the final determination of her first EEOC action.

The 90-day deadline to file suit in district court is not a jurisdictional requirement but is instead similar to a statute of limitations. *Colbert v. Potter*, 471 F.3d 158, 167 (D.C. Cir. 2006). Similar to a statute of limitations, the 90-day rule is an affirmative defense which Defendant bears the burden of proving. *Id.* at 165. If Defendant meets its burden, then Plaintiff bears the burden of proving that she is entitled to an equitable avoidance of the defense. *See Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir 1997).

In her Complaint, Plaintiff claimed that her appeal was still pending in her first EEOC action. Compl., ECF No. 1, ¶ 7. But, in its motion, Defendant presented evidence that there had been a final determination of Plaintiff's appeal on March 17, 2017. Def'.'s Mot., ECF No. 6, Ex. E. Because Plaintiff did not file her Complaint in this Court until November 20, 2017, nearly eight months after the EEOC's final determination, Defendant argues that Plaintiff did not file within the 90-day deadline. Accordingly, Defendant contends that Plaintiff's claims which were raised in her first EEOC action are untimely. In her opposition to Defendant's motion, Plaintiff counters that her claims are not untimely because the final determination of her first EEOC action was sent to her lawyer's previous address, so she never received actual notice of the final determination.

At the outset, the Court must decide whether to consider Defendant's timeliness argument as a motion to dismiss or as a motion for summary judgment. The Court concludes that the issue is most appropriately dealt with under the summary judgment standard. Both Defendant and Plaintiff attached exhibits to their briefing on Defendant's motion. While some of the attached exhibits are referred to in the Complaint, others are not incorporated or referenced in the Complaint and are arguably outside the scope of the Complaint. Accordingly, as the Court is considering material outside the four corners of the Complaint, the Court evaluates Defendant's timeliness argument under the summary judgment standard. *See Marshall Cty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n. 5 (D.C. Cir. 1993) (advising that it is "probably the better practice for a district court always to convert to summary judgment so as to avoid ... question[s]" as to whether attached exhibits were properly considered in ruling upon a motion to dismiss under Rule 12(b)(6)). Accordingly, Defendant must prove that there is "no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In considering the merits of Defendant's timeliness argument, the first question the Court must answer is whether the delivery of the final EEOC determination to the address of record for Plaintiff's counsel, which was no longer his correct address, constitutes "receipt of notice" and triggers the 90-day clock. *McGary v. Crowley*, 266 F. Supp. 3d 254, 258 (D.D.C. 2017). Neither the D.C. Circuit nor the United States Supreme Court has decided whether there has been "receipt of notice" when a final EEOC determination is sent to the address of record for the plaintiff's attorney which is no longer the correct address. In considering this question, the Court is especially persuaded

by the excellent reasoning of Judge Randolph Moss in *McGary v. Crowley*, 266 F. Supp. 3d 254 (D.D.C. 2017). As explained in *McGary*, the court receives guidance primarily from three decisions.

First, in *Bell v. Brown*, 557 F.2d 849 (D.C. Cir. 1977), the D.C. Circuit interpreted Title VII's then 30-day, now 90-day, clock as beginning to run only on actual notice to the plaintiff. 557 F.2d at 857. Because neither party disputes that Plaintiff did not receive actual notice of the EEOC's final determination, *Bell* would seem to foreclose Defendant's timeliness argument.

But, the Supreme Court's decision in *Irwin v. Department of Veteran Affairs*, 498 U.S. 89 (1990) scaled back *Bell's* holding. In *Irwin*, the Court ruled that a plaintiff had constructive notice of the EEOC's final determination when notice is received by the plaintiff's attorney. 498 U.S. at 92. Following, *Irwin* actual notice by the plaintiff is no longer required before § 2000e-16(c)'s 90-day clock begins to run. Actual notice by the plaintiff's attorney is sufficient to start the clock. But, *Irwin* did not address the issue of whether or not there is "receipt of notice" when neither the plaintiff nor the plaintiff's attorney receives actual notice of the EEOC's final determination.

Following *Irwin*, the D.C. Circuit appears to have somewhat reconsidered its approach to "receipt of notice," as is shown in *Rao v. Baker*, 898 F.2d 191 (D.C. Cir. 1990). That case involved an EEOC regulation which required an employee to bring an EEOC appeal within 20 days of the agency's final decision. 29 C.F.R. § 1613.233(a). While *Rao* involved a different EEOC regulation, *Rao* is still instructive in determining how the D.C. Circuit interprets the requirement for notice.

In *Rao*, the Court questioned whether or not notice was received by a plaintiff when an agency mailed its final decision to the plaintiff's last known address and to plaintiff's attorney. The plaintiff had left the country and failed to alert the agency to a change of address, and the plaintiff's attorney did not file his appeal within the 20-day deadline. *Rao*, 898 F.2d at 192. Even though the plaintiff did not actually receive notice, the D.C. Circuit held that his EEOC appeal was untimely because he had been constructively notified of the EEOC's final decision when the notice was sent to his address of record. *Id.* at 193-94.

The court declined to extend the holding of *Bell*, which required actual notice, in part because "Rao himself, not the agency, [had] designated the faulty mechanism which resulted in his nonreceipt of the notice." *Id.* at 197. The Court explained that imposing a requirement of actual notice where the agency has taken reasonable steps to send proper notice, but the employee has made inadequate arrangements for receipt, would allow employees to evade filing deadlines by providing incorrect addresses. *Id.*

The court went on to highlight why *Rao* reached a different conclusion than *Bell* on whether or not actual notice is required. According to *Rao*, *Bell* required actual notice because "the 30-day [now 90-day] statutory limit for filing a civil suit brooked no exceptions." *Id.* at 194. Because there were no exceptions, the *Bell* court determined that the remedial purpose behind Title VII would be best served by giving the plaintiff a full 30 days to file suit after he or she was actually made aware of the final determination. *Id.* at 194-95. The *Rao* court went on to explain that *Bell's* rationale did not apply in *Rao* because the regulation at issue in *Rao* was subject to equitable tolling. *Id.* at 195.

According to the *Rao* court, "[h]ad equitable tolling been explicitly available in *Bell*, the court might not have felt compelled to interpret the statutory 'receipt' requirement as calling for actual receipt in all cases to protect Title VII complainants." *Id*.

The hypothetical contemplated in *Rao* has come to pass as equitable tolling now applies to the 90-day deadline under § 2000e-16(c). *See Irwin*, 498 U.S. at 94-97; *see also* 29 C.F.R. § 1614.604(c). The availability of equitable tolling obviates much of the rationale behind the D.C. Circuit's requirement of actual notice in *Bell*. But regardless of whether or not the rationale underpinning *Bell* is still valid, *Bell* remains binding on this Court. *See United State v. Torres*, 115 F.3d 1033, 1036 (D.C. Cir. 1997) ("[D]istrict judges, like panels of this court, are obligated to follow controlling circuit precedent until either we, sitting en banc, or the Supreme Court, overrule it."). And, if this case falls within the scope of *Bell*, the Court must apply *Bell's* requirement of actual notice before the 90-day deadline begins to run.

However, the Court concludes that the facts of this case fall into an exception not considered in *Bell*. That exception applies when the plaintiff's lack of notice is the plaintiff's own fault, in which case the 90-day deadline begins to run from the date that the notice would have been received if the plaintiff had made the proper arrangements to receive it. This exception extends *Rao's* reasoning to § 2000e-16(c) because equitable tolling, which was available in *Rao*, is now available under § 2000e-16(c).

The Court finds support for its conclusion in *Maggio v. Wisconsin Ave. Psychiatric Center, Inc.*, 795 F.3d 57 (D.C. Cir. 2015), which involved a private-sector Title VII suit under the analogous § 2000e-5(f)(1). In that case, the plaintiff had never

received actual notice of the EEOC's final determination because he had failed to update his address. The plaintiff never argued that the 90-day limitations period did not begin to run until he received actual notice. But, the court observed that "'when plaintiffs fail to receive notice through their own fault, the 'actual-notice' rule does not apply.'" *Maggio*, 795 F.3d at 59 n.1 (quoting *Day v. Lincoln Ins. Agency, Inc.*, 1 Fed. Appx. 521, 523 (7th Cir.2001) (per curiam) (unpublished)).

The Court finds further support for its conclusion that actual notice is not required in this case based on decisions from other district courts in this circuit. Other district courts in this circuit have concluded that when a plaintiff has failed to receive notice of a final EEOC determination through the plaintiff's own fault, the 90-day deadline begins to run from the date the plaintiff would have received notice had the plaintiff taken the appropriate steps to receive the notice. For example, in *Redding v. District of Columbia*, 828 F. Supp. 2d 272 (D.D.C. 2011), the plaintiff did not receive notice of the EEOC's final determination in time to make a timely complaint because she failed to collect her mail due to various hospitalizations. 828 F. Supp. 2d at 281-82. The court concluded that the 90-day deadline began to run when the letter was delivered to the address of record, even though the plaintiff did not actually receive the letter. *Id.* at 282. As the court explained, the plaintiff had "constructive receipt of a Right to Sue Letter at the time it [was] delivered to the address on file with the EEOC [because the plaintiff was] the one at fault for the delay in obtaining it." *Id.* at 281; *see also Snead v. Mosbacher*, 1991 WL 7166, at *3 (D.D.C. Jan. 9, 1991), *aff'd* 953 F.2d 688 (D.C. Cir. 1992) (per curiam) ("Absent exceptional circumstances, when a plaintiff fails to provide the  minimum

assistance to the administrative process by ensuring delivery of notice to his current address, he should not be heard to complain that he did not receive the letter delivered to his last known address."); *see also McGary*, 266 F. Supp. 3d at 261 (explaining that actual notice is not required when lack of notice is the plaintiff's own fault).

Based on the above reasoning, the Court concludes that the 90-day deadline to file suit in federal court began to run when Plaintiff would have received the notice if she had appropriately updated her counsel's address. The EEOC issued its final determination in Plaintiff's appeal on March 17, 2017 and the decision was mailed that same day to Plaintiff's counsel at the address counsel had provided. Def.'s Mot., ECF No. [6], Ex. E at 20. Accordingly, Plaintiff's suit in federal court, which was filed nearly eight months later, on November 20, 2017, was not filed within the 90-day deadline for her first EEOC action.

However, even if Plaintiff's suit was filed outside the 90-day deadline, her claims can still be maintained in this Court if there are grounds for equitable tolling. *See Irwin*, 498 U.S. at 94-97 (allowing equitable tolling for complaints filed outside the 90-day window under § 2000e-16(c)). Federal courts typically allow equitable tolling only sparingly. *Irwin*, 498 U.S. at 96. For example, courts will allow equitable tolling "in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Id*. Courts are much less likely to use their equitable powers to forgive late filings "where the claimant failed to exercise due diligence in preserving his legal rights." *Id.* Here, the

Court does not find suitable grounds to equitably toll the 90-day deadline in § 2000e-16(c) because this is a case of "what is at best a garden variety claim of excusable neglect." *Id.*

As the Court reads Plaintiff's opposition, Plaintiff presents two arguments for why the Court should equitably toll the 90-day deadline. First, Plaintiff argues that, while the agency did mail two letters to the address of record for Plaintiff's attorney, the agency did not take sufficient steps to ensure that notice was received by Plaintiff. Second, Plaintiff argues that her counsel did inform the EEOC of his new address in Plaintiff's second EEOC action, and the EEOC failed to send notice of the final determination of the first action to that new address. The Court has considered both of Plaintiff's arguments but is persuaded by neither.

First, Plaintiff argues that the Court should equitably toll the 90-day deadline because the EEOC did not take sufficient steps to ensure that Plaintiff received notice of its final determination. Plaintiff explains that the EEOC sent two letters to Plaintiff's counsel at his address of record which were returned to the EEOC as undeliverable. The EEOC did not send a letter to Plaintiff's home address, nor did the EEOC call or email Plaintiff or her counsel. Plaintiff further argues that the EEOC had normally communicated with her counsel by email and should have done so regarding the notice of a final determination.

But, Plaintiff fails to consider that, as long as there was not deception or trickery on the part of the defendant, the test for equitable tolling does not focus on whether or not the defendant should have done more. Instead, the test for equitable relief focuses on

whether or not Plaintiff took sufficient actions to diligently preserve her legal rights. *Irwin*, 498 U.S. at 96 (explaining that courts "have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights"). And, the Court finds that Plaintiff did not take steps to diligently preserve her legal rights in this case.

It was Plaintiff's obligation to notify the EEOC of any change of address. 29 C.F.R. § 1601.7(b). On Plaintiff's Notice of Appeal, which Plaintiff sent to the EEOC, an incorrect address is listed for Plaintiff's attorney. Def.'s Mot., ECF No. 6, Ex. D, 3. The EEOC mailed an acknowledgment of Plaintiff's appeal to the address of record for Plaintiff's attorney. *Id.* at Ex. L, ¶ 4. The acknowledgment letter explained that Plaintiff was "responsible for providing the Commission with notice of any change of address." *Id*. Not only did Plaintiff and her attorney fail to update the address, but there is no evidence that Plaintiff took any other actions to diligently pursue her rights, such as inquiring with the EEOC as to the status of her appeal

When a plaintiff does not receive notice of an EEOC determination because of her own failure to notify the EEOC of a change of address, she is not entitled to equitable tolling. *See McGary*, F. Supp. 3d at 261. Considering this same issue in the private sector context, the D.C. Circuit has held that "when a complainant fails to receive a right-to-sue notice because he gave the EEOC an incorrect address or because he neglected to inform the EEOC when he moved, the complainant is at fault and he is not entitled to equitable tolling." *Maggio*, 795 F.3d at 60. In that case, as in this one, the EEOC had made only one attempt to contact the employee by mail. *Id.* at 59.

The case before the Court is distinguishable from past cases in this circuit in at least one respect: here, it was the attorney, not the plaintiff, that failed to update his address of record. But, the Court finds that this is a distinction without a difference. *See Irwin*, 498 U.S. at 92 (explaining that "[u]nder our system of representative litigation, each party is deemed bound by the acts of his lawyer-agent" (internal quotations omitted)). The Supreme Court has explained that garden variety claims of attorney negligence do not warrant equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 651-52 (2010). Instead, the attorney's misconduct must be "extraordinary" before equitable tolling can be applied. *Id*. Here, Plaintiff is asking the Court to find that her counsel's failure to update his address of record was extraordinary and worthy of equitable tolling. The Court disagrees and concludes that the failure of Plaintiff's counsel to update his address was garden-variety negligence. *See Galloway v. Watt*, 185 F. Supp. 3d 130, 134-35 (D.D.C. 2016) (refusing equitable tolling where the attorney incorrectly calculated the 90-day deadline following the EEOC's final determination).

Accordingly, even if the EEOC took only minimal steps to notify Plaintiff of its final determination, Plaintiff's own lack of diligence and the absence of extraordinary circumstances preclude equitable tolling.

Looking next to Plaintiff's second argument, Plaintiff argues that she did inform the EEOC of her counsel's change of address. Pl.'s Opp'n, ECF No. 15, 11. Plaintiff claims that "from October 2014 until June 2017, the Plaintiff conducted an entire administrative proceeding where she and her counsel both used the correct, new address." *Id*. Plaintiff further argues that, because the EEOC had referenced the correct address for

Plaintiff's counsel on dozens of exchanges, the EEOC should have used this new, correct address when mailing the final determination. *Id.*

The Court is not persuaded by Plaintiff's argument. In her opposition to Defendant's motion, Plaintiff attaches communications from the EEOC which reflect the correct address for Plaintiff's counsel. However, each of the communications presented by Plaintiff come from her second EEOC action rather than from her first. *See Id.* at Exs. A-1, A-2. A-3. And, it is the first EEOC action that the Court finds resulted in an untimely complaint in federal court. Whether or not the EEOC was made aware of the new address of Plaintiff's counsel in her second EEOC action is not relevant to the first action. The burden on Plaintiff and her counsel to maintain a correct address of record is a minimal burden. But, the burden on the EEOC to pore through its files to determine whether any employees have multiple actions with different addresses would be enormous. *See St. Louis v. Alverno College*, 744 F.2d 1314, 1316-17 (7th Cir. 1984). The fact that plaintiff's counsel provided a correct address in a second EEOC action did not relieve him of his duty to update his address in the first EEOC action.

Considering only Plaintiff's first EEOC action, there is no evidence that the EEOC was ever notified of the correct address. In the Notice of Appeal for Plaintiff's first EEOC action, Plaintiff's attorney indicates the incorrect mailing address. Def.'s Mot, ECF No. 6, Ex. D, 3. The Notice of appeal included the pre-appeal determination from Plaintiff's first EEOC action, and that document also lists an incorrect address for Plaintiff's counsel. *Id.* at 5. Plaintiff presents no evidence that either she or her attorney ever corrected the incorrect address of record in her first EEOC action. And, a declaration

from an Associate Director of the EEOC states that "[a] review of the documents in the digital IMS repository and the hard copy appellate file did not reveal any change of address or change of representative notices from [Plaintiff or her attorney]." *Id.* at Ex. L, ¶ 5.

Based on the evidence presented, the Court concludes that Plaintiff's attorney did not provide the EEOC with his updated address for Plaintiff's first EEOC action. Because neither Plaintiff nor her attorney updated the address of record, the Court will not grant equitable tolling on this ground.

In summary, The Court concludes that there is no genuine dispute of material fact concerning whether or not Plaintiff's claims arising from her first EEOC action were timely filed under 42 U.S.C. § 2000e-16(c). Even though Plaintiff did not receive actual notice of the final determination, the 90-day clock began to run on the date on which Plaintiff would have received notice had she or her counsel taken the appropriate steps to ensure that her counsel's address of record was correct. Because the 90-day deadline began when Plaintiff would have received notice, the Court concludes that her Complaint, filed eight months later, did not timely raise the claims asserted in Plaintiff's first EEOC action. And, Plaintiff provides no appropriate grounds for the Court to grant equitable tolling. Accordingly, as a matter of law, Defendant is entitled to summary judgment on the claims asserted in Plaintiff's first EEOC action. *See* Fed. R. Civ. Pro. 56(a).

Unlike the claims raised in Plaintiff's first EEOC action, the claims raised in Plaintiff's second EEOC action were filed in district court within 90 days of the EEOC's

final determination. Accordingly, the claims asserted in Plaintiff's second EEOC action are timely. But, the Court notes that Plaintiff's timely filing of the claims raised in her second EEOC action does not render timely the claims asserted in her first EEOC action. *See Briscoe v. Kerry*, 111 F. Supp. 3d 46, 58 (D.D.C. 2015) (explaining that claims brought in a separate, untimely EEOC action cannot be "piggybacked onto [the plaintiff's] timely filed civil action" as such piggybacking would circumvent the purpose of the deadlines). Accordingly, summary judgment is GRANTED to Defendant on the claims asserted in Plaintiff's first EEOC action as those claims are untimely.

## IV. HOSTILE WORK ENVIRONMENT CLAIMS

In addition to arguing that the claims raised in Plaintiff's first EEOC action are untimely, Defendant also seeks to dismiss Plaintiff's hostile work environment claims. Defendant argues that some of the allegations behind Plaintiff's hostile work environment claims are untimely, as they were raised by Plaintiff in her first EEOC action, and unexhausted, as they were never raised before the EEOC. Defendant further argues that, considering only the timely, exhausted allegations, Plaintiff has failed to state a claim for which relief can be granted. *See* Fed. Civ. Pro. R. 12(b)(6).

The Court considers Defendant's argument in two parts. First, the Court agrees with Defendant that allegations which are untimely and unexhausted should not be considered as part of Plaintiff's hostile work environment claims. Second, considering only those timely allegations which were raised in Plaintiff's second EEOC action, the Court finds that Plaintiff has stated a claim for which relief may be granted.

First, the Court agrees with Defendant that allegations which were raised in Plaintiff's first EEOC action are untimely and cannot be considered as part of Plaintiff's hostile work environment claims. Plaintiff's Complaint presents two allegations relating to a hostile work environment which were raised in her first EEOC action. First, Plaintiff claims that her Palestinian co-workers refused to act on Plaintiff's submission of maintenance and purchase orders for medical supplies. In response to this refusal, Plaintiff alleges that her supervisor was unsupportive and forced her to re-order the supplies. Compl., ECF No. 1, ¶¶ 12-13; *see also* Def.'s Mot., ECF No. 6, Ex. C, 23; Ex. A, 18. Second, Plaintiff claims that one of her supervisors called her a "bitch." Compl., ECF No. 1, ¶ 20; *see also* Def.'s Mot., ECF No. 6, Ex. C, 17.

Plaintiff relies on *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 (2002) for the proposition that the Court should consider these untimely allegations which were raised in her first EEOC action. But, Plaintiff misinterprets *Morgan*. In *Morgan*, the Court considered only whether acts occurring outside the 45-day time period for filing an EEOC complaint can be considered in a hostile work environment claim. 536 U.S. at 122. The *Morgan* Court did not consider whether a plaintiff can obtain judicial review of allegations from an EEOC action which were brought outside of the 90-day filing period. *See Ikossi v. Dep't of Navy*, 516 F.3d 1037, 1044 (D.C. Cir. 2008) (explaining that *Morgan* "does not suggest that a plaintiff can obtain judicial review of an EEO decision outside the ninety-day period"). Plaintiff provides no other support for her contention that the Court should consider these allegations as part of her hostile work

environment claims. Accordingly, the Court will not consider these untimely allegations from Plaintiff's first EEOC action as part of her hostile work environment claims.

There is one additional allegation that the Court finds unexhausted and declines to consider as part of Plaintiff's hostile work environment claims. In her Complaint, Plaintiff alleges that her 24/7 access to the health unit was removed without any explanation. Compl., ECF No. 1, ¶ 25. Plaintiff did not raise this allegation in her first or her second EEOC action. Plaintiff again attempts to rely on *Morgan* to argue that this unexhausted allegation should be considered. But, Plaintiff's reliance is again misplaced. As previously explained, *Morgan* considered only whether acts occurring outside the 45-day time period for filing an EEOC complaint are time barred. 536 U.S. at 122. *Morgan* did not consider whether allegations which were never presented in an EEOC action can be presented for the first time in district court. *See Ikossi*, 516 F.3d at 1044 (explaining that *Morgan* "does not suggest that a plaintiff can … raise a hostile work environment claim without first exhausting her administrative remedies"). In short, *Morgan* dealt with timeliness, not exhaustion. Moreover, the removal of Plaintiff's 24/7 access to the health unit occurred prior to the filing of Plaintiff's second EEOC action and could have been raised there. *Contrast with Poole v. U.S. Gov't Publ'g Office*, 258 F. Supp. 3d 193, 201-03 (D.D.C. 2017) (explaining that some courts have allowed plaintiffs to bring related, unexhausted allegations in support of a hostile work environment claim if those allegations occurred after the administrative complaint was filed). Plaintiff presents no other argument for why the Court should consider an unexhausted allegation that was never raised before the EEOC.

Second, the Court next considers whether Plaintiff has stated a claim for which relief can be granted. Considering only Plaintiff's timely, exhausted allegations, the Court concludes that Plaintiff has alleged sufficient facts to avoid dismissal under Rule 12(b)(6). In order to state a hostile work environment claim, a plaintiff must plead facts which are severe or pervasive enough to "alter the conditions of [her] employment and create an abusive working environment." *Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006) (internal quotations omitted). The Court concludes that Plaintiff has pled facts sufficient to show that discriminatory actions altered the conditions of her employment and created an abusive working environment.

In her Complaint, Plaintiff generally described an environment in which "[t]ensions between employees of the ACJI are common, with Jewish employees frequently feeling as a discriminated-against minority." Compl., ECF No. 1, ¶ 11. Plaintiff went on to claim that "[t]hroughout [her] tenure at ACJI, she was subjected to all kinds of hostile acts by her co-workers, such as direct discriminatory and hateful comments about her religion and nationality." *Id.* at ¶ 14. She claims that ACJI management was aware of the discriminatory activity, did nothing to stop it, and was sometimes complicit in the behavior. *Id.*

According to Defendant, the above allegations are the only allegations which Plaintiff presents in support of her hostile work environment claims. But, as the Court reads Plaintiff's Complaint, Plaintiff alleges additional incidents contributing to a hostile work environment.

First, Plaintiff also alleges that she was not compensated for engaging in continuing education in the same manner in which other similarly situated workers not in Plaintiff's protected class were compensated. *Id.* at ¶¶ 23-24. Second, Plaintiff alleges a hostile work environment based on the fact that "the Regional Medical Officer [at] the ACJI intended to fire Plaintiff and was actively engaging in pursuing that goal." *Id.* at ¶ 28. Plaintiff claims that the Human Resources department at ACJI repeatedly initiated pretextual investigations of Plaintiff, resulting in the loss of her local prescription-writing privileges. *Id.* at ¶¶ 29-31. Plaintiff argues that these acts were committed in retaliation for filing her first EEOC action. The fact that these allegations are part of Plaintiff's retaliation claim does not preclude the allegations from also supporting Plaintiff's hostile work environment claim. *See Román v. Castro*, 149 F. Supp. 3d 157, 166 (D.D.C. 2016) ("The D.C. Circuit has recognized the validity of retaliatory-hostile-work-environment claims.") (citing *Baird v. Gotbaum*, 662 F.3d 1246, 1251 (D.C. Cir. 2011)).

Considering all the circumstances, the Court concludes that Plaintiff has pled sufficient facts to maintain a claim that her hostile work environment "alter[ed] the conditions of her employment and create[d] an abusive working environment." *Hussain*, 435 F.3d at 366 (D.C. Cir. 2006). The Court makes no judgment on the ultimate merits of Plaintiff's claim. The Court only concludes that a motion to dismiss is not the appropriate vehicle for evaluating the character or consequences of the acts alleged to have created a hostile work environment. *See Holmes-Martin v. Leavitt,* 569 F. Supp. 2d 184, 193 (D.D.C. 2008) (denying defendant's motion to dismiss plaintiff's hostile work environment claim because notice pleading only requires that plaintiff plead facts that

"support" a claim, not those that "establish" it); *see also Winston v. Clough*, 712 F. Supp. 2d 1, 13 (D.D.C. 2010) (explaining that "despite its sparse nature," plaintiff's complaint "sufficiently allege[d] facts that could be probative of a discriminatory hostile work environment by incorporating the purportedly discriminatory conduct that [plaintiff] experienced, and asserting that the discriminatory conduct constituted a hostile work environment").

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS-IN-PART and DENIES-IN-PART Defendant's Motion for Partial Dismissal, or in the Alternative, for Partial Summary Judgment. The Court GRANTS partial summary judgment as to the claims raised in Plaintiff's first EEOC action, as those claims were not brought to federal district court within the 90-day deadline following the EEOC's final determination. But, the Court DENIES dismissal of Plaintiff's hostile work environment claims. Considering only the allegations which were properly raised, Plaintiff has stated a claim upon which relief can be granted.

The Court ORDERS Plaintiff to file an Amended Complaint presenting only those claims which were properly raised and exhausted in her second EEOC action by NOVEMBER 16, 2018. The Court further ORDERS Defendant to file a response to Plaintiff's Amended Complaint by DECEMBER 7, 2018. An appropriate Order accompanies this Memorandum Opinion.

Dated: October 25, 2018

                                                    /s/
                                         COLLEEN KOLLAR-KOTELLY
                                         United States District Judge